**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X   Case No.
MARIE VOLCY and GLENNY LOPEZ,

                                 Plaintiffs,                 **COMPLAINT**

               -against-

                                         **PLAINTIFF DEMANDS**
KARP SCARSDALE, LLC, and JOJO AUGUSTINE,   **A TRIAL BY JURY**
*individually*,

                             Defendants.
-------------------------------------------------------------------X

        Plaintiffs, MARIE VOLCY and GLENNY LOPEZ, by and through their attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.     Plaintiffs complain pursuant to **Title VII of the Civil Rights Act of 1964**, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the **New York State Human Rights Law**, NYS Executive Law § 296, et. seq. ("NYSHRL"), and seeks damages to redress the injuries she has suffered as a result of being **sexually harassed, subjected to a hostile work environment, discriminated against and retaliated against on the basis of their gender (female)**.

## JURISDICTION AND VENUE

2.     Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

3.     The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as it is a judicial district

where a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

5.      Plaintiffs filed charges of discrimination upon which this Complaint is based with the Equal

Employment Opportunities Commission (hereinafter "EEOC").

6.      Plaintiffs received a Notice of Right to Sue from the EEOC, dated September 13, 2018,

with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7.      This action is being commenced within ninety (90) days of receipt of said Notice.

## PARTIES

8.      That at all times relevant hereto, Plaintiff MARIE VOLCY ("VOLCY") is a resident of the

State of New York and County of Westchester.

9.      That at all times relevant hereto, Plaintiff GLENNY LOPEZ ("LOPEZ") is a resident of

the State of New York and County of Westchester.

10.     That at all times relevant hereto, Defendant KARP SCARSDALE LLC ("KARP") is a

domestic limited liability company, duly existing pursuant to, and by virtue of, the laws of

the State of New York, with its principal place executive office located at 34 Shecter Rock

Road, Manhasset, New York 11030.

11.     Defendant KARP does business as "The Ambassador of Scarsdale – Assisted Living

Facility."

12.     Defendant KARP operates an Assisted Living Facility located at 9 Saxon Wood Road,

White Plains, New York 10605 (the "Facility").

13.     That at all times relevant hereto, Plaintiffs were employees of Defendant KARP.

14.     That at all times relevant, Plaintiffs worked at the Facility.

15.     That at all times relevant hereto, Defendant JOJO AUGUSTINE ("AUGUSTINE") was an

2

employee of Defendant KARP, holding the position of "Director of Environmental Services" at Defendant KARP's Facility.

16. That at all times relevant hereto, Defendant AUGUSTINE was Plaintiffs' supervisor and/or had supervisory authority over Plaintiffs. Defendant AUGUSTINE had the authority to hire, fire or affect the terms and conditions of Plaintiffs' employment.

17. That all times relevant hereto, Defendants, KARP and AUGUSTINE, are collectively referred to herein as "Defendants."

## MATERIAL FACTS AS TO PLAINTIFF VOLCY

18. In or around the Winter of 2015/2016, Plaintiff VOLCY began her employment with Defendant KARP, as "Caregiver," in Defendant KARP's Facility's Nursing Department. Plaintiff VOLCY began earning approximately $15.00 per hour. Plaintiff VOLCY had an expected 2017 salary of approximately $33,600.00.

19. At all times relevant hereto, Plaintiff VOLCY was an exemplary employee and received compliments for her work performance.

20. However, immediately after Plaintiff VOLCY commenced her employment, it was clear that the environment was sexually harassing.

21. On or around Plaintiff VOLCY's first day of work, it was snowing, so Arlinda DaSilva ("Ms. DaSilva"), Plaintiff VOLCY's Coordinator and Director of Resident Services at Defendant KARP, requested that Plaintiff VOLCY stay and sleep at Defendant KARP.

22. Plaintiff VOLCY told Defendant AUGUSTINE that she needed a pillow and sheets. Defendant AUGUSTINE asked which room she was sleeping in, in order to drop off the items.

23. At approximately 11:00 p.m., Plaintiff VOLCY woke up because she felt somebody was touching her. When Plaintiff VOLCY opened her eyes, she saw Defendant AUGUSTINE.

In shock, Plaintiff VOLCY asked Defendant AUGUSTINE why he was there.

24.    Defendant AUGUSTINE responded that he came there to "make love" to her. Plaintiff VOLCY rejected his unwelcome sexual advances. Defendant AUGUSTINE proceeded to pull the sheet off of Plaintiff VOLCY.

25.    Plaintiff VOLCY responded by telling him to get out. Defendant AUGUSTINE told Plaintiff not to yell and then left.

26.    A few months later, Plaintiff VOLCY was not feeling well, so she proceeded to get a tea bag from the cabinet. (the "Tea Incident").

27.    When Defendant AUGUSTINE saw Plaintiff VOLCY taking a tea bag, he scolded her by saying "you not working! Why are [you] com[ing] here to take [a] tea bag from there."

28.    Upset, Plaintiff VOLCY threw out the tea and left.

29.    Anita Boykin ("Ms. Boykin"), a Caregiver, met Plaintiff VOLCY in the basement, and told her "what Jojo said to you wasn't good, he's not supposed to talk to you like that…"

30.    Plaintiff VOLCY told Ms. Boykin, "he knew what he did to me, because he wants me to [have sex] with him. I don't want that. That's why he said that to me." Ms. Boykin responded, "wow, really, it's not fair…"

31.    Approximately two weeks after the Tea Incident, Defendant AUGUSTINE told Plaintiff VOLCY, "you are my enemy." Plaintiff VOLCY responded, "no I'm not your enemy, I just don't like the way you talk to me."

32.    Soon thereafter, Plaintiff VOLCY asked Defendant AUGUSTINE for a queen sized white sheet. Defendant AUGUSTINE responded, "I don't have queen, only twin size. I will let you know when I have the queen size."

33.    A short time later, Defendant AUGUSTINE passed Plaintiff VOLCY on the floor, and told Plaintiff VOLCY, "Marie, can you come to my office, I have the sheet for you."

34.　Plaintiff VOLCY told Defendant AUGUSTINE that she was coming and went downstairs to get the sheet. Defendant AUGUSTINE said, "get the sheet on the shelf."

35.　When Plaintiff VOLCY was looking for the queen-sized sheet, Defendant AUGUSTINE closed the door and proceeded to rub Plaintiff VOLCY's butt and attempted to pull Plaintiff VOLCY's pants down.

36.　Plaintiff VOLCY held her pants up, preventing him from pulling them down, and asked Defendant AUGUSTINE what he was doing and that he was crazy.

37.　Upon turning around, Plaintiff VOLCY saw Defendant AUGUSTINE had his penis out of his pants.

38.　Defendant AUGUSTINE responded, "no, I like you and I want to make sex with you." Plaintiff VOLCY responded, "No, JoJo, I can't [have sex] with you." Defendant AUGUSTINE said, "okay…I want you to do blowjob for me."

39.　Defendant AUGUSTINE continued by asking Plaintiff VOLCY if she liked working there. When Plaintiff VOLCY responded in the positive, Defendant AUGUSTINE told her, "if you want to keep your job from getting fired, you need to do so."

40.　Plaintiff VOLCY responded that she does not want to get fired, and in fear for her job, proceeded to perform fellatio on Defendant AUGUSTINE.

41.　During this unlawful act, Defendant AUGUSTINE continued the physical sexual harassment, on Plaintiff VOLCY, by rubbing her breasts and told Plaintiff VOLCY that he wants to "fuck [her] from behind."

42.　Plaintiff VOLCY responded, no and that she "cannot fuck with [him]".

43.　Defendant AUGUSTINE responded by telling Plaintiff VOLCY that she needs to make him ejaculate.

44.　Plaintiff VOLCY told Defendant AUGUSTINE that she cannot and to let her do her job.

45.     Defendant AUGUSTINE only let Plaintiff VOLCY leave, when the Front Desk called.

46.     Approximately one month later, Plaintiff VOLCY told Grace Jerome ("Ms. Jerome") a Nurse at Defendant KARP, what Defendant AUGUSTINE did to her a month prior. Ms. Jerome responded in shock and said that he was not supposed to do that to her.

47.     Upon information and belief, Although Ms. Jerome had a supervisory authority of Plaintiff VOLCY, Ms. Jerome did not advise Human Resources, Ms. Jerome did not discipline or otherwise tell Defendant AUGUSTINE to stop his unlawful conduct, nor did Ms. Jerome advise Ms. Jerome of how to complain about sexual harassment.

48.     In early 2017, when there was another snow storm, when Ms. DaSilva asked Ms. Jerome to sleep over again, Ms. Jerome told Ms. DaSilva that she could not sleep over and would come back in the morning.

49.     From in or around early 2017 until in or around September 2017, when Defendant AUGUSTINE saw Plaintiff VOLCY, he would tell her, "can you come to my office to suck my penis." Plaintiff VOLCY would respond to Defendant AUGUSTINE that she was coming, but would not follow him.

50.     Each time Defendant AUGUSTINE said that, Plaintiff VOLCY felt extremely offended and targeted, due to her gender (female).

51.     In or around the Summer of 2017, Plaintiff VOLCY forgot her radio in Apartment 229. When Plaintiff VOLCY got to Apartment 229, she saw Manuel Medrano, ("Mr. Medrano"), a maintenance worker. Plaintiff VOLCY told him that she had forgotten her radio and had come to retrieve it. Mr. Medrano told Plaintiff VOLCY that he was there to "spray the ants".

52.     Soon thereafter, Defendant AUGUSTINE called Apartment 229 and saw Plaintiff VOLCY leaving the room. Defendant AUGUSTINE asked Plaintiff VOLCY what happened and

Plaintiff VOLCY responded that she forgot her radio, so she went to get it.

53.     Later, when Mr. Medrano came into the office for his break, Defendant AUGUSTINE told Mr. Medrano that Mr. Medrano has to answer the radio when Mr. Medrano has women with him.

54.     Plaintiff VOLCY commented to Mr. Medrano that perhaps Defendant AUGUSTINE thought the two were alike in character, sexual harassers who "put [their] hands on [her] and asking [her] to make love with him."

55.     Mr. Medrano told Plaintiff VOLCY, that he had heard about Defendant AUGUSTINE putting his hands on other females and asking them for sex.

56.     Plaintiff VOLCY asked Mr. Medrano to whom she should report Defendant AUGUSTINE. Mr. Medrano told Plaintiff VOLCY, "Jean and Joe, they are the same. Don't waste your time going to them. When they know something about JoJo, they will cover for him…You know what you need to do, go to the owner, explain to him what's going on."

57.     Jean Dunphy ("Ms. Dunphy"), is the Executive Director of Defendant KARP.

58.     Plaintiff VOLCY responded that the owner does not talk to the employees. She explained that if she cannot talk to Ms. Dunphy to report, she does not see herself going to the owner.

59.     In or around early August 2017, cameras were installed at Defendant KARP. After the installation, Defendant AUGUSTINE stopped asking Plaintiff VOLCY to suck his penis.

60.     On or about in 2017, James (Last Name Unknown) ("James"), Home Health Aid from Kindred Facility and Defendant AUGUSTINE's co-worker, touched Plaintiff VOLCY's buttocks. James told Plaintiff that he wanted to "eat" her buttocks.

61.     Plaintiff VOLCY complained to Defendant AUGUSTINE.

62.     In or around August 2017, Jerome Hampton ("Mr. Hampton"), Personal Trainer with Fitness for Life, came up to Plaintiff VOLCY and told her, "I heard you are JoJo's

girlfriend." Plaintiff VOLCY responded that Defendant AUGUSTINE got her the job, but
that was it.

63.   In or around June or July 2017, Emmanuel Offin ("Mr. Offin"), the Concierge, told Harold
(Last Name Unknown) ("Harold"), a former Kitchen Worker, that something was going on
between Plaintiff VOLCY and Defendant AUGUSTINE.

64.   In shock, Plaintiff VOLCY complained to Ms. Jerome and told her what Mr. Hampton and
Mr. Medrano said to her. Ms. Jerome told Plaintiff VOLCY, "Marie, it's not fair. You need
to go talk to JoJo about it." Again, Ms. Jerome did not report this, did not admonish anyone
or advise Plaintiff VOLCY how to complain to upper management.

65.   Plaintiff VOLCY went to the front desk to see if Defendant AUGUSTINE was still there.
The Front Desk told Plaintiff VOLCY that he left. Plaintiff VOLCY text messaged
Defendant AUGUSTINE and told him that she needed to talk to him face-to-face.

66.   The next day, when Defendant AUGUSTINE came to work, Plaintiff VOLCY told
Defendant AUGUSTINE what she heard. Soon thereafter, Defendant AUGUSTINE called
Harold into his office and called Mr. Hampton on the phone.

67.   Since that conversation, Mr. Hampton avoids Plaintiff VOLCY.

68.   On or about Saturday, August 12, 2017, Plaintiff VOLCY was working in Apartment 229
taking care of a patient.

69.   Plaintiff VOLCY received a radio call from Mr. Offin for her to clear an emergency call in
Apartment 343. Plaintiff VOLCY responded that she was busy in Apartment 229 and will
go when she was finished.

70.   Soon thereafter Plaintiff VOLCY responded to the emergency call in Apartment 343.

71.   On the way to Apartment 219, Plaintiff VOLCY received a second radio call from Mr.
Offin to come to the Front Desk. Plaintiff VOLCY responded that the clients in Apartment

219 were waiting for her and that she would come when she was finished. Mr. Offin responded "fine, as soon as you finish."

72.     When Plaintiff VOLCY came to the Front Desk, Mr. Offin told Plaintiff VOLCY to come inside by Ms. Dunphy's Office. Plaintiff VOLCY asked Mr. Offin why he wanted her to come inside. Mr. Offin responded, "I have something to show you."

73.     When Plaintiff VOLCY came into the office, Mr. Offin closed the door, by the Front Desk.

74.     Mr. Offin proceeded to hug Plaintiff VOLCY, turn her around, and grab her buttocks. Mr. Offin then told Plaintiff VOLCY, "I want your backside to me."

75.     Plaintiff VOLCY responded by asking if this is why he called her and why was he doing this to her.

76.     Plaintiff VOLCY left the office right away and complained Ms. Jerome and Ms. DaSilva.

77.     On or about October 23, 2017, Plaintiff VOLCY reported all of the sexually harassing and discriminatory conduct to Defendant's Human Resources Department.

78.     Plaintiff VOLCY has not received any updates since her complaint.

79.     In or around December 6, 2017, bonuses were distributed to employees. Plaintiff VOLCY did not receive a bonus until a few days later, on or about December 8, 2017.

80.     Upon information and belief, this was done in retaliation to Plaintiff VOLCY lodging a complaint against Defendant AUGUSTINE.

81.     Plaintiff VOLCY complained to Ms. Dunphy regarding this retaliation. Although Plaintiff VOLCY watched the bonus checks be distributed to all the other employees around her, except her, Ms. Dunphy advised that it was "not true". Ms. Dunphy advised Plaintiff VOLCY that bonuses were a "privilege" and that Plaintiff VOLCY would receive her bonus soon.

82.     On or about January 25, 2018, Ms. DaSilva and Jayashree Joshy ("Ms. Joshy"), Director

of Clinical Services, informed Plaintiff VOLCY that Plaintiff VOLCY was not allowed to walk and talk, side-by-side with Plaintiff VOLCY's co-workers, even when Plaintiff VOLCY is on break at the same time.

83. Upon information and belief, this instruction was made in demand in retaliation for lodging a complaint of sexual harassment and gender discrimination against Defendants.

84. On or about February 9, 2018, Plaintiffs filed a joint Charge of Discrimination against Defendant KARP for Gender Discrimination and Retaliation, with the EEOC.

85. Upon information and belief, since filing with the EEOC, Defendants have orchestrated a campaign, including various baseless write-ups, in retaliation for Plaintiff VOLCY filing her claims with the EEOC.

86. By way of an example, on or about February 11, 2018, Plaintiff VOLCY was called into a meeting with Amba Sharma ("Mr. Sharma"), Owner of Defendant KARP. Mr. Sharma alleged that they have serious rules about residents' safety and they report everything to the New York State Department of Health. In addition, if an individual is reported, they may never get a job in that industry again, as there are no second chances with the nursing staff. **Plaintiff VOLCY took this as a clear threat to her employment**. Mr. Sharma proceeded to threaten Plaintiff VOLCY by telling her that they are giving her a warning and she needs to be careful because if she does something else again, she would not have a job.

87. By way of a second example, on or about April 6, 2018, Plaintiff VOLCY has been written up for time-and-attendance issues, although Plaintiff VOLCY took most of these days off for being under the weather.

88. By way of a third example, upon information and belief, Defendants are excessively monitoring Plaintiff VOLCY, in order to find reasons to give Plaintiff VOLCY a verbal

counseling and/or written warning, for performance issues.

89.  By way of a fourth example, Defendants have increased Plaintiff VOLCY's case assignments on an almost weekly basis, making it difficult for Plaintiff VOLCY to properly attend to all of her patients, during her shift.

90.  In fact, on or about March 28, 2018, Plaintiff VOLCY complained to Ms. Joshy about Plaintiff VOLCY's excessive assignments. In response, Ms. Joshy told Plaintiff VOLCY, "if that assignment [is] too much for you, that means [this] is not the right one for you. If you can't do it, you have to leave." **Plaintiff took this as a threat to her job, in retaliation for her previously lodged complaint**.

91.  By way of a fifth example, on or about March 29, 2018 and March 30, 2018, Ms. Joshy called Dayana Nkrumah ("Ms. Nkrumah") and other employees, to inquire into Plaintiff VOLCY's work performance. Upon information and belief, Defendants are trying to find any possible reason to terminate Plaintiff VOLCY.

92.  On or about May 23, 2018, Plaintiff VOLCY was only five (5) minutes late. Ms. DaSilva proceeded to tell Plaintiff VOLCY that she cannot be five (5) minutes late and had to be careful or Joe Lopuzzo ("Mr. Lopuzzo"), Chief of Operations, would fire hire.

93.  Later that day, Mr. Lopuzzo called Plaintiff and told her to move her car from the parking spot she was in. Thomas Chandy ("Mr. Chandy"), Concierge, also called Plaintiff VOLCY to move her car.

94.  Upon information and belief, no other employee is restricted from parking in any open spot, nor are they scolded for being five (5) minutes late.

95.  By way of a sixth example, on or about June 6, 2018, Defendants, through Ms. DaSilva and Ms. Joshy, gave Plaintiff VOLCY a final warning, suspended Plaintiff VOLCY for three (3) days, and gave Plaintiff VOLCY a shift change, for allegedly discussing rumors

about Defendant AUGUSTINE.

96.   The day prior, on or about June 5, 2018, Plaintiff VOLCY wrote a statement to Defendant KARP stating that she heard Maria (Last Name Unknown) ("Maria"), a Former Licensed Practical Nurse, say that she found Defendant AUGUSTINE having sex with Hellen (Last Name Unknown) ("Hellen"), Home Health Aide at Defendant KARP, in the basement. In addition, Plaintiff wrote that Maria also made this claim to Ms. Jerome.

97.   On or about June 12, 2018, Nana Akoto ("Mr. Akoto"), a Home Health Aide for Defendant KARP, told Plaintiff to go upstairs with him and put lotion on his back. This was done in the presences of Gloria Amoko ("Ms. Amoko"), another Home Health Aide at Defendant KARP.  Plaintiff refused to comply.

98.   Plaintiff asked Mr. Akoto, why he did not ask Ms. Amoko to do it, as she was standing right near him. Mr. Akoto responded that Ms. Amoko was too old and wanted Plaintiff to put the lotion on his back.

99.   As of the date of this Complaint, Plaintiff continues to face retaliation for complaining of sexual harassment and discrimination. This includes, but is not limited to, baseless accusation of poor performance and questioning over possible theft of patient property.

## MATERIAL FACTS AS TO PLAINTIFF LOPEZ

100.   On or about November 1, 2015, Plaintiff LOPEZ began her employment with Defendant KARP, as a Housekeeper, in Defendant KARP's Housekeeping Department. Plaintiff LOPEZ began earning approximately $ 12.50 per hour and worked between forty-two (42) and forty-four (44) hours per week.

101.   In or round April 2017, Plaintiff LOPEZ received a raise to $13.00 per hour. Plaintiff LOPEZ had an expected 2017 salary of $29,744.00.

102.   At all times relevant hereto, Plaintiff LOPEZ was an exemplary employee and received

compliments for her work performance.

103.    However, even before Plaintiff LOPEZ commenced her employment, it was clear that the environment was sexually harassing.

104.    On the day of Plaintiff LOPEZ's interview, in or around October 2015, Defendant AUGUSTINE was taking Plaintiff LOPEZ to his office, for her to fill out employment paperwork.

105.    During the elevator ride to his office, Defendant AUGUSTINE asked Plaintiff LOPEZ if she was married. Plaintiff LOPEZ responded that she was married with three children.

106.    Defendant AUGUSTINE continued to stare and smile at Plaintiff LOPEZ.

107.    **Plaintiff LOPEZ took Defendant AUGUSTINE's stare and smile to be of a sexual manner because of the way his body was positioned**.

108.    Defendant AUGUSTINE told Plaintiff LOPEZ that she was very pretty and proceeded to touch her leg.

109.    In shock, Plaintiff LOPEZ recoiled herself away from Defendant AUGUSTINE.

110.    Soon thereafter, Plaintiff LOPEZ was notified that her first day would be on November 1, 2015.

111.    From the beginning of Plaintiff LOPEZ's employment, she noticed that Defendant AUGUSTINE continued to stare and smile at her.

112.    In or around December 2015, Plaintiff LOPEZ went to work in the wing where the patients had dementia and other issues.

113.    Plaintiff went into one of the rooms and saw Defendant AUGUSTINE standing in front of a female patient with his zipper and his pants down engaging in a sexual act.

114.    In shock, Defendant AUGUSTINE turned around and closed his zipper. He left the room speechless.

13

115. On multiple occasions, Defendant AUGUSTINE would ask Plaintiff LOPEZ when are they going to go out? Defendant AUGUSTINE would also tell Plaintiff LOPEZ that he wanted to be with her and he would buy her a phone, so they could talk.

116. Defendant AUGUSTINE even offered Plaintiff money, but Plaintiff LOPEZ never accepted.

117. In or around June or July 2016, Defendant AUGUSTINE stuffed money in Plaintiff LOPEZ's front pocket. Plaintiff LOPEZ immediately took the money out of her pocket and threw it on the ground.

118. Approximately three (3) times a week, Defendant AUGUSTINE would send Plaintiff LOPEZ to clean a room and would appear there, while she was working.

119. Defendant AUGUSTINE would proceed to touch Plaintiff LOPEZ, on her breasts, underneath her clothing against her objections.

120. Each day Plaintiff LOPEZ worked, she feared being harassed by Defendant AUGUSTINE.

121. On at least three occasions, in shock and upset, Plaintiff LOPEZ turned around and saw that Defendant AUGUSTINE had his zipper open and his penis was exposed.

122. Defendant AUGUSTINE would immediately grab Plaintiff LOPEZ's hand and put it over his penis.

123. Defendant AUGUSTINE also threated Plaintiff LOPEZ by telling her, if she did not masturbate him that he would fire her. Plaintiff LOPEZ was forced to comply.

124. On or around June or July 2016, upon learning of Defendant AUGUSTINE's sexually harassing conduct, Plaintiff LOPEZ's sister called Defendant KARP and reported Defendant AUGUSTINE in detail.

125. Plaintiff LOPEZ's sister spoke to Ms. Dunphy, who was adamant about not believing what Plaintiff LOPEZ's sister was telling her.

14

126.  Plaintiff LOPEZ recounted what she had seen to another housekeeper. They told Plaintiff LOPEZ that she was not surprised by what Plaintiff LOPEZ said because something similar was happening to her.

127.  This co-worker mentioned that Defendant AUGUSTINE touched her on her leg in the elevator and tried to grab her breasts.

128.  Rather than complain, the female housekeeper quit after some time, due to the sexually hostile and abusive environment from Defendant AUGUSTINE.

129.  When Defendant AUGUSTINE approach Plaintiff LOPEZ to masturbate him, in or around Summer 2016, she refused to continue.

130.  However, Defendant AUGUSTINE continued to attempt to touch Plaintiff, and on some occasions, did in fact touch Plaintiff on her body.

131.  For example, the most recent touching occurred in or around May 2017, when Plaintiff LOPEZ was working in the basement of Defendant KARP. Defendant AUGUSTINE came up behind Plaintiff LOPEZ and attempted to grab her hand. Defendant AUGUSTINE also made a comment that Plaintiff LOPEZ could not understand. Plaintiff LOPEZ immediately walked away and continued working.

132.  In addition, Defendant AUGUSTINE continued to make sexual comments towards Plaintiff LOPEZ, up until she went on vacation.

133.  For example, the most recent comment was in or around June 2017, when Defendant AUGUSTINE told Plaintiff to go upstairs with him to do something sexual in nature.

134.  Approximately one week prior to taking her scheduled vacation, Plaintiff was speaking with Mr. Medrano, which Defendant AUGUSTINE witnessed.

135.  Soon thereafter, Plaintiff LOPEZ was called down to the office and was told that she could no longer have her additional days of vacation. Plaintiff LOPEZ responded that Defendant

AUGUSTINE had already approved those days. However, in response, the individual said that they did not care and Plaintiff LOPEZ could not have the additional days.

136.    In or around late June 2017, Plaintiff LOPEZ went on scheduled vacation.

137.    Prior to going on vacation, Plaintiff LOPEZ called Defendant KARP and asked for some additional time off. Defendant AUGUSTINE advised her that he would notify the appropriate people and that it was "fine."

138.    In or around early July 2017, upon Plaintiff LOPEZ's return, she was terminated for not reporting to work on her scheduled return date.

139.    Plaintiff LOPEZ attempted to speak with Ms. Dunphy. However, Defendant AUGUSTINE refused to let Plaintiff LOPEZ speak with Ms. Dunphy and required her to leave the premises immediately.

140.    Upon information and belief, Plaintiff LOPEZ's termination was orchestrated by Defendant AUGUSTINE in retaliation for objecting to his sexual advances.

## MATERIAL FACTS AS TO BOTH PLAINTIFFS

141.    Plaintiffs have become disturbed and distressed by the blatant discrimination they have suffered on the basis of their gender.

142.    Based on the foregoing, Plaintiffs have been damaged as a result of Defendants' discrimination.

143.    As a result of the acts and conduct complained of herein, Plaintiffs have suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiffs have further experienced emotional distress.

144.    Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiffs demand Punitive Damages as against all Defendants, jointly and severally.

145.   As a result of the above, Plaintiffs have been damaged in an amount which exceeds the jurisdiction limits of the Court.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

146.   Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

147.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of Defendant KARP. Plaintiffs complain of Defendant KARP's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (sexual harassment).

148.   Defendant KARP engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq., by discriminating against Plaintiffs because of their gender (sexual harassment that resulted in a hostile work environment).

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

149.   Plaintiffs repeats and realleges each and every allegation made in the above paragraphs of this complaint.

150.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

151.   Defendant KARP engaged in unlawful employment practices prohibited by 42 U.S.C. §

17

2000e et seq. by discriminating against Plaintiffs with respect to the terms, conditions or privileges of employment because of their opposition to the unlawful employment practices of Defendant KARP.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

152.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

153.    Executive Law § 296 provides that

> 1. It shall be an unlawful discriminatory practice:  "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

154.    Defendants violated the section cited herein as set forth.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK STATE LAW

155.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

156.    Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

157.    Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiffs because of their opposition to the unlawful employment practices of the Defendants.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

158.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this

complaint.

159.    New York State Executive Law § 296(6) provides that it shall be an unlawful

discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of

any acts forbidden under this article, or attempt to do so."

160.    Defendants violated the section cited herein as set forth.

## JURY DEMAND

161.    Plaintiffs request a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiffs respectfully request a judgment against the Defendants:

A.      Declaring that Defendants engaged in unlawful employment practices prohibited by **Title**

**VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e, et. seq. ("Title VII")

and the **New York State Human Rights Law**, NYS Executive Law § 296, et. seq.

("NYSHRL") in that Defendants discriminated against Plaintiffs on the basis of their sex

and gender;

B.      Awarding damages to Plaintiffs for all lost wages and benefits resulting from Defendants'

unlawful discrimination and to otherwise make her whole for any losses suffered as a result

of such unlawful employment practices;

C.      Awarding Plaintiffs compensatory damages for mental, emotional and physical injury,

distress, pain and suffering and injury to her reputation in an amount to be proven;

D.      Awarding Plaintiffs punitive damages;

E.      Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the

action; and

F.      Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and

proper to remedy Defendants' unlawful employment practices.

Dated:  New York, New York
        September 21, 2018

                                            **PHILLIPS & ASSOCIATES,**
                                            **ATTORNEYS AT LAW, PLLC**

                          By:   _____
                                Marjorie Mesidor, Esq.
                                Brittany A. Stevens, Esq.
                                *Attorneys for Plaintiff*
                                45 Broadway, Suite 620
                                New York, New York 10006
                                T: (212) 248 - 7431
                                F: (212) 901 – 2107
                                mmesidor@tpglaws.com
                                bstevens@tpglaws.com

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Glenny Lopez<br>193 Neppehan Avenue<br>Apt. 1-N<br>Yonkers, NY 10701 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2018-02132** | **Carlos Jacome,**<br>**Investigator** | **(212) 336-3756** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Kevin J. Berry,**
**District Director**

5/13/2018

*(Date Mailed)*

Enclosures(s)

cc:

**KARP SCARSDALE, LLC**
**34 Shecter Rock Road**
**Manhasset, NY 11030**

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Marie Volcy**
234 Drake Avenue
New Rochelle, NY 10805

From: **New York District Office**
33 Whitehall Street
5th Floor
New York, NY 10004

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2018-02131** | **Carlos Jacome,** Investigator | **(212) 336-3756** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*  9/B/2018

**Kevin J. Berry,**
**District Director**

*(Date Mailed)*

Enclosures(s)

cc:

**KARP SCARSDALE, LLC**
34 Shecter Rock Road
Manhasset, NY 11030

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of
your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the
charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
*before 7/1/10 – not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*